1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JEANINE A. IDEKER,

        Plaintiff,

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

NO. EDCV 09-1748 AGR

**MEMORANDUM OPINION AND ORDER**

      Jeanine A. Ideker filed this action on September 25, 2009.  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on October 23 and 26, 2009.  (Dkt. Nos. 7, 9.)  On June 9, 2010, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The Court has taken the matter under submission without oral argument.

      Having reviewed the entire file, the Court remands this matter to the Commissioner for proceedings consistent with this Opinion.

///
///
///
///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

## PROCEDURAL BACKGROUND

On December 27, 2004, Ideker filed applications for disability insurance benefits and supplemental security income benefits.  Administrative Record ("AR") 62.  In both applications, Ideker alleged a disability onset date of September 4, 1994.  *Id.*  The applications were denied initially and on reconsideration.  AR 62, 82, 91.  Ideker requested a hearing before an Administrative Law Judge ("ALJ").  AR 97.  On February 12, 2007, the ALJ conducted a hearing at which Ideker and a vocational expert ("VE") testified.  AR 338-71.  On April 24, 2007, the ALJ issued a decision denying benefits.  AR 59.  On August 31, 2007, the Appeals Council denied Ideker's request for review.  AR 52-54.  Thereafter, Ideker submitted additional evidence to the Appeals Council.  AR 8-46, 48-51.  On December 31, 2008, the Appeals Counsel again denied Ideker's request for review.  AR 6-7.  This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the

///

1   evidence is susceptible to more than one rational interpretation, the Court must

2   defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

**III.**

**DISCUSSION**

**A.    Disability**

A person qualifies as disabled, and thereby eligible for such benefits, "only

if his physical or mental impairment or impairments are of such severity that he is

not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20,

21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks

omitted).

**B.    The ALJ's Findings**

The ALJ found that Ideker met the insured status requirements through

March 31, 2000.  AR 64.

Ideker has the severe impairment of fibromyalgia.  AR 64.  Ideker has the

residual functional capacity ("RFC") to perform light work, except that she can

only "lift or carry 10 pounds frequently and 20 pounds occasionally."  AR 65, 69.

She can stand or walk (with normal breaks) for a total of about 6 hours in an 8-

hour workday and sit (with normal breaks) for a total of about 6 hours in an 8-hour

workday.  AR 65-66.  She can occasionally climb ramps and stairs, balance,

stoop, kneel, crouch, and crawl.  AR 66.  She should avoid concentrated

exposure to hazards.  *Id.*

The ALJ found that Ideker cannot perform at least some of her past

relevant work, but "there are jobs that exist in significant numbers in the national

economy that [she] can perform," such as office clerk, cashier, and fast food

worker.  AR 68-70.

///

3

1

### C.    Medical Evidence

2

Ideker contends that the ALJ failed to properly consider the treating

3

physicians' opinions regarding her physical and mental limitations.  JS 4-9.

4

According to Ideker, the ALJ improperly disregarded the opinions of Drs. Freyne

5

and Mitzner.  JS 4.  She further claims that the ALJ improperly rejected brain

6

injury and depression as severe impairments at step two of the sequential

7

analysis.  JS 7.  Ideker appears to claim that the ALJ was biased because of an

8

"unwillingness to properly develop the record."  JS 8.

9

An opinion of a treating physician is given more weight than the opinion of

10

non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  When

11

a treating physician's opinion is contradicted by another doctor, "the ALJ may not

12

reject this opinion without providing specific and legitimate reasons supported by

13

substantial evidence in the record.  This can be done by setting out a detailed

14

and thorough summary of the facts and conflicting clinical evidence, stating his

15

interpretation thereof, and making findings."  *Id.* at 632 (quotation marks and

16

citations omitted).  When the ALJ declines to give a treating physician's opinion

17

controlling weight, the ALJ considers several factors, including the following:  (1)

18

length of the treatment relationship and frequency of examination;[1] (2) nature and

19

extent of the treatment relationship;[2] (3) the amount of relevant evidence

20

supporting the opinion and the quality of the explanation provided; (4)

21

///

22

23

[1] "Generally, the longer a treating source has treated you and the more
24 times you have been seen by a treating source, the more weight we will give to
the source's medical opinion.  When the treating source has seen you a number
25 of times and long enough to have obtained a longitudinal picture of your
impairment, we will give the source's opinion more weight than we would give it if
26 it were from a nontreating source."  20 C.F.R. §§ 404.1527(d)(2)(i),
416.927(d)(2)(i).

27

[2] "Generally, the more knowledge a treating source has about your
28 impairment(s) the more weight we will give to the source's medical opinion."  20
C.F.R. §§ 404.1527(d)(2)(ii), 416.927(d)(2)(ii).

1    consistency with record as a whole; and (5) the specialty of the physician

2    providing the opinion.  *See id.* at 631; 20 C.F.R. §§ 404.1527(d), 416.927(d).

3          An examining physician's opinion constitutes substantial evidence when it

4    is based on independent clinical findings.  *Orn*, 495 F.3d at 632.  However,

5    "[w]hen an examining physician relies on the same clinical findings as a treating

6    physician, but differs only in his or her conclusions, the conclusions of the

7    examining physician are not 'substantial evidence.'"  *Id.*

8          A non-examining physician's opinion constitutes substantial evidence when

9    it is supported by other evidence in the record and consistent with it.  *Andrews v.*

10   *Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  However, a non-examining

11   physician's opinion cannot by itself constitute substantial evidence.  *Widmark v.*

12   *Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006).

13         "When there is conflicting medical evidence, the Secretary must determine

14   credibility and resolve the conflict."  *Thomas v. Barnhart*, 278 F.3d 947, 956-57

15   (9th Cir. 2002) (citation and quotation marks omitted).

                        **1.    Dr. Freyne**

17         The ALJ gave Dr. Freyne's opinion less weight on the grounds that (a) her

18   view that Ideker had to change position every 5-10 minutes was "not

19   substantiated by any clinical findings or diagnostic studies of record"; (b) she only

20   treated Ideker on three occasions in April-June 2005; and (c) her opinion was

21   inconsistent with the opinion of examining physician Dr. Gerson and state agency

22   physician Dr. Swan.  AR 67-68.  The ALJ provided adequate reasons for not fully

23   crediting Dr. Freyne's opinion.

24         A treating physician's opinion may be discounted if it is not "well-supported

25   by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R.

26   §§ 404.1527(d)(2), 416.927(d)(2).  Dr. Freyne's June 2005 letter stated Ideker

27   "has to change positions every 5-10 minutes from sitting to standing due to

28   discomfort."  AR 290.  Dr. Freyne further opined that Ideker is unable to drive long

1     distances, housework must be done with frequent breaks, fatigue is persistent,

2     sleep quality at night is poor, she has a poor memory, and lifting and carrying are

3     difficult. *Id.* However, the record does not contain any treatment records with

4     clinical findings from Dr. Freyne.  An ALJ "need not accept the opinion of any

5     physician, including a treating physician, if that opinion is brief, conclusory, and

6     inadequately supported by clinical findings."[3] *Thomas*, 278 F.3d at 957; *see also*

7     *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004);

8     *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (per curiam) (ALJ need not

9     accept treating physician's opinion that is "brief and conclusionary in form with

10    little in the way of clinical findings to support [its] conclusion").

11         The ALJ also discounted Dr. Freyne's opinion on the ground that she

12    treated Ideker only on three occasions in a three-month period and, therefore, did

13    not have an opportunity to evaluate Ideker's course of illness.  AR 67.  The ALJ

14    may consider the treating physician's length of treatment.  *See Orn*, 495 F.3d at

15    631.  Dr. Freyne states she evaluated Ideker on three occasions during April-

16    June 2005.  AR 290.  Ideker testified at the hearing that she saw Dr. Freyne only

17    "once or twice."  AR 363.

18         Dr. Freyne's opinion was inconsistent with the opinion of examining

19    physician Dr. Gerson.  AR 67.  An examining physician's opinion constitutes

20    substantial evidence when, as here, it is based on independent clinical findings.

21    *Orn*, 495 F.3d at 631.  Dr. Gerson opined that Ideker was able to lift 10 pounds

22    frequently, 20 pounds occasionally, and could stand and walk for up to 6 hours in

23    an 8-hour workday and sit for 6 hours in an 8-hour workday.  AR 259.  Dr.

24    Gerson's opinion was consistent with state agency physician Dr. Swan.  AR 267-

25

26         [3]  Ideker argues there are no specific findings or tests that can be
      performed to support a diagnosis of fibromyalgia.  This argument misses the
27    point.  The ALJ found that Ideker suffers from fibromyalgia and did not dispute Dr.
      Freyne's diagnosis.  AR 64.  The ALJ discounted Dr. Freyne's opinion as to
28    Ideker's need to change positions every 5-10 minutes, and Ideker does not show
      that no clinical tests exist to assess her functional limitations.

1    74.  A non-examining physician's opinion constitutes substantial evidence when it

2    is supported by other evidence in the record and is consistent with it.  *Andrews*,

3    53 F.3d at 1041.  Dr. Swan found Ideker was able to lift 10 pounds frequently, 20

4    pounds occasionally and could stand or sit for a total of 6 hours in an 8-hour

5    workday.  AR 268.

6          The ALJ provided specific and legitimate reasons for discounting Dr.

7    Freyne's opinion.  The ALJ did not err.

8                    **2.**     **Dr. Mitzner**

9          The ALJ discounted Dr. Mitzner's opinion that Ideker was unable to work

10   on the grounds that (a) it was conclusory and "not supported by significant clinical

11   signs or symptoms in [Dr. Mitzner's] progress notes"; and (b) Dr. Mitzner did not

12   refer Ideker to a specialist for evaluation and treatment of an allegedly disabling

13   condition.  AR 68, 233, 241, 242.  The ALJ provided specific and legitimate

14   reasons for discounting Dr. Mitzner's statements.

15         The ALJ need not accept a treating physician's opinion as to disability.  "A

16   treating physician's evaluation of a patient's ability to work may be useful or

17   suggestive of useful information, but a treating physician ordinarily does not

18   consult a vocational expert or have the expertise of one."  *McLeod v. Astrue*,

19   2011 U.S. App. LEXIS 2346, *6 (9th Cir. Feb. 4, 2011).  Although an impairment

20   is a medical condition, disability is an administrative determination, reserved to

21   the Commissioner, of how an impairment affects the ability to engage in gainful

22   activity.  *Id.*

23         As discussed above, the ALJ "need not accept the opinion of any

24   physician, including a treating physician, if that opinion is brief, conclusory, and

25   inadequately supported by clinical findings."  *Thomas* 278 F.3d at 957.  Dr.

26   ///

27   ///

28   ///

                                          7

1   Mitzner's treatment records do not contain clinical findings that support his

2   opinions.[4]  AR 184-227; *Thomas*, 278 F.3d at 957; *Young*, 803 F.2d at 968.

3          The ALJ also considered that Dr. Mitzner was a family practioner and never

4   referred Ideker to a specialist for evaluation or treatment of an allegedly disabling

5   condition.  AR 68.  The ALJ was permitted to consider Dr. Mitzner's specialization

6   in determining how much weight to give his opinion.  *See* 20 C.F.R. §§

7   404.1527(d)(5) ("We generally give more weight to the opinion of a specialist

8   about medical issues related to his or her area of specialty than the opinion of a

9   source who is not a specialist."), 416.927(d)(5) (same); *see Rollins v. Massanari*,

10  261 F.3d 853, 856 (9th Cir. 2001) (treating physician opinion may be discounted

11  when it does not contain recommendations one would expect for a disabling

12  condition).[5]  The ALJ did not err.

13                     **3.     Nonsevere Impairments**

14         Ideker argues that the ALJ erred in finding that brain injury and depression

15  were not severe impairments at step two of the sequential analysis.  Even

16  assuming error at step two, such error was harmless.  *Burch v. Barnhart*, 400

17  F.3d 676, 682 (9th Cir. 2005).  Any prejudice to Ideker could occur only at steps

18  four and five because all other steps were decided in her favor.  *Id.*  The RFC

19  takes into account limitations imposed by all impairments, even those that are not

20  severe.  *Id.* at 683 (citing SSR 96-8p); AR 66.

21                     **4.     Bias**

22          Ideker's claim of bias appears to simply reflect a disagreement with the

23  ALJ's findings.  *See* JS 8-9.  In an administrative hearing, a party alleging bias

24  must overcome a presumption of honesty and integrity.  *See Withrow v. Larkin*,

25  _____

26        [4] Again, Ideker's argument that there are no specific findings or tests that
      can be performed to support a diagnosis of fibromyalgia is rejected for reasons
27    stated in footnote 3.

28        [5] After the ALJ's decision, Dr. Mitzner referred Ideker to a pain specialist.
      AR 44.

421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975); *see also Schweiker v. McClure*, 456 U.S. 188, 195-96, 102 S. Ct. 1665, 72 L. Ed. 2d 1 (1982); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214-15 (9th Cir. 2005) (a claimant is required to show that "the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment") (citations and quotation marks omitted).  Here, Ideker has failed to present evidence demonstrating bias and has not rebutted the presumption.

> ### D.  Credibility

Ideker contends the ALJ failed to consider her subjective complaints and credibility.  JS 17.  "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  The ALJ found that Ideker's medically determinable impairment could reasonably be expected to produce the alleged symptoms.  AR 66.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted).  "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

Here, the ALJ made no finding of malingering.  *See generally* AR 62-70. He found that Ideker's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible."  AR  66.  "[T]o

9

1    discredit a claimant's testimony when a medical impairment has been

2    established, the ALJ must provide specific, cogent reasons for the disbelief."

3    *Orn*, 495 F.3d at 635 (citations and quotation marks omitted).  "The ALJ must cite

4    the reasons why the claimant's testimony is unpersuasive."  *Id.* (citation, brackets,

5    and quotation marks omitted).  In weighing credibility, the ALJ may consider

6    factors including:  the nature, location, onset, duration, frequency, radiation, and

7    intensity of any pain; precipitating and aggravating factors (*e.g.*, movement,

8    activity, environmental conditions); type, dosage, effectiveness, and adverse side

9    effects of any pain medication; treatment, other than medication, for relief of pain;

10    functional restrictions; the claimant's daily activities; and "ordinary techniques of

11    credibility evaluation."  *Bunnell*, 947 F.2d at 346 (citation omitted).  The ALJ may

12    also consider inconsistencies or discrepancies in a claimant's statements and

13    inconsistencies between a claimant's statements and activities.  *Thomas*, 278

14    F.3d at 958-59.

15         "If the ALJ's credibility finding is supported by substantial evidence in the

16    record, we may not engage in second-guessing."  *Thomas*, 278 F.3d at 958-59

17    (citing *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.

18    1999)).

19         The ALJ discounted Ideker's credibility for at least three reasons:  (1) the

20    objective medical evidence in the record did not support the degree of Ideker's

21    complaints; (2) Ideker's statements were inconsistent with her daily activities; and

22    (3) Ideker was prescribed conservative treatment.[6]  AR 66-67.

23    ///

24

25         [6]  The ALJ also noted Ideker's lack of need for any assistive devices to
ambulate, lack of requirement for any special accommodations, lack of evidence
26    of any significant atrophy, loss of strength, or difficulty moving, the medication
was relatively effective in controlling Ideker's symptoms, no side effects from
27    mediation, no loss of weight, no evidence of sleep deprivation due to pain or
depression, and no evidence of disuse or muscle atrophy.  AR 66-67.

28

The ALJ found that the objective evidence did not support functional limitations to the degree Ideker alleged. AR 66. The ALJ noted that Ideker's physical exams have been mostly normal except for tenderness in the lumbar spine, loss of range of motion of the lumbar spine, crepitus, and loss of range of motion of the bilateral knees. *Id.* Straight leg raise testing has been negative and Ideker is neurologically intact. *Id.* Further, an MRI of the cervical spine was negative except for a 3mm protrusion at C4-5 and 2mm bony bar at C5-6 with no stenosis, nerve root impingement or other abnormality. *Id.*

After the ALJ's decision on April 24, 2007, and after the Appeals Council denied review on August 31, 2007, Ideker submitted additional medical records to the Appeals Council for the period after the date last insured. The Appeals Council concluded the new information provided no basis to reopen and change the decision and stated that the ALJ's decision constituted the final decision of the Commissioner. AR 6. Given that the Appeals Council considered the new evidence, this Court also considers the medical records. *Lingenfelter*, 504 F.3d at 1030 n.2; *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). To warrant a remand, Ideker must show the new evidence is material to determining her disability. *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). To be material, the new evidence must bear "'directly and substantially on the matter in dispute.'" *Mayes*, 276 F.3d at 462 (citation omitted). In addition, Ideker must demonstrate "a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing."[7] *Id.*

The additional medical records bear on the ALJ's findings as to the objective medical evidence. Whereas the ALJ found that Ideker's straight leg raising has been negative based on the examining physician's report on March 7,

---

[7] This Court's review is limited to the Commissioner's final decision. If new evidence establishes disability as of a later date, Ideker's recourse is to file a new application for benefits.

2005 (AR 66), a medical record dated August 28, 2007 found positive straight leg raising on the left for pain shooting down to the top of her foot (AR 45).  Whereas the ALJ found no evidence of trigger points (AR 66), the August 28, 2007 medical record found paraspinous muscle tenderness with several trigger points (AR 45). Remand is appropriate so the ALJ may consider the additional medical records and determine whether they affect his findings as to Ideker's credibility and residual functional capacity.

### E.   Steps Four and Five of the Sequential Analysis

Because this matter is being remanded, the Court notes only that the ALJ omitted the limitations regarding climbing, balancing, stooping, kneeling, crouching, and crawling in his hypothetical to the VE.  *See* AR 65-66, 366.  While the ALJ is not required to include limitations in a hypothetical that are not in his findings (*Rollins*, 261 F.3d at 857 (9th Cir. 2001); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001)), he is required to include the limitations he found credible and supported by substantial evidence.  *Bayliss*, 427 F.3d at 1217-18; *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (In determining the claimant's RFC, the ALJ may elicit testimony from a VE, but the hypothetical must consider all of the claimant's limitations.).

### IV.

### ORDER

IT IS HEREBY ORDERED that this matter is remanded for further proceedings consistent with this Opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: March 31, 2011

ALICIA G. ROSENBERG
United States Magistrate Judge

12